**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION**

| | |
|---|---|
| CELIA MARTINEZ GONZALEZ, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>DANIEL DEFENSE, LLC, et al.,<br><br>Defendants. | Case No.: Case 2:24-cv-00077 |

**DEFENDANTS EOTECH, LLC'S AND PROJECT ECHO HOLDINGS, LLC'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

Defendants EOTECH and Project Echo, by and through their attorneys, respectfully submit this reply in further support of their motion to dismiss Plaintiffs' claims against them.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE BARRED BY THE PLCAA.

Plaintiffs do not argue that any of the exceptions to the PLCAA apply, and have therefore conceded that it bars their claims if EOTECH is a manufacturer and the Sight is a component part for purposes of the PLCAA.[1]

### A. EOTECH Is a Manufacturer of the Sight under the PLCAA.

Plaintiffs argue that the PLCAA does not bar their claims against EOTECH because it is

[1] Although the Motion did not exceed the page limit set by Rule CV-7(c), Plaintiffs requested an extension of five pages for their Opposition. They seek to disregard even such extended page limit by seeking to incorporate arguments made in briefing on other motions that did not involve EOTECH. Defendants object to their attempt to circumvent this Court's rules. Plaintiffs claim that the PLCAA does not provide immunity from suit. Opp'n at 15 n.7. The case they cite, however, simply holds that the PLCAA does not affect the subject matter jurisdiction of a federal district court, an argument never raised in the Motion.

not a manufacturer of the Sight. Opp'n at 15. As set forth in the Motion, the PLCAA defines a "manufacturer," with respect to a qualified product, as "a person who is engaged in the business of manufacturing the product in interstate or foreign commerce and who is licensed to engage in business as such a manufacturer under chapter 44 of title 18, United States Code." 15 U.S.C. § 7903(2). Plaintiffs allege that EOTECH "is engaged in the business of manufacturing the product in interstate or foreign commerce." Pet. ⁋ 15 ("EOTech manufactured, marketed, sold, and shipped" the Sight). The provision referenced by Section 7903(2), defines a manufacturer as "any person engaged in the business of manufacturing firearms . . . for purposes of sale or distribution; and the term 'licensed manufacturer' means any such person licensed under the provisions of this chapter." 18 U.S.C. § 921(a)(10). EOTECH holds a type 07 (manufacturer of firearms) FFL, which makes it a manufacturer for purposes of the PLCAA.

Plaintiffs argue that EOTECH cannot be a manufacturer of the Sight for purposes of the PLCAA even though it holds a FFL, because an FFL is not legally required to manufacture the Sight. That argument is illogical. It ignores the plain language of the PLCAA, and would eliminate the immunity provided for manufacturers of component parts of firearms. The only part of a firearm that requires an FFL to manufacture is the frame/receiver, which is itself defined as a "firearm," 18 U.S.C. § 921(a)(3)(B), and therefore does not need to rely on the provision regarding component parts to be considered a qualified product for purposes of the PLCAA's immunity. Based on Plaintiffs' argument, they could sue the manufacturers and sellers of all of the parts on the Subject Rifle at the time it was criminally misused by the Shooter, regardless of their status as manufacturers and sellers for purposes of the PLCAA, except for the receiver because it is the only part that is itself considered to be a firearm and requires an FFL. Such arguments are exactly why Congress included component parts for firearms in the definition of qualified products. Plaintiffs'

argument that EOTECH is not a manufacturer of the Sight under the PLCAA would require rewriting the PLCAA; it is not a colorable argument based on the actual language used by Congress.[2]

**B. <u>The Sight is a Qualified Product under the PLCAA.</u>**

Plaintiffs also argue that the PLCAA does not apply to their claims because the Sight is not a component part of a firearm under the PLCAA, such that it is not a qualified product. Opp'n at 17. Plaintiffs base that flawed argument on their contention that because a "sight does not play an integral or necessary role in the operation of the underlying weapon: discharging a round of ammunition," it is not a component part and instead "is an accessory." *Id.* The term "accessory" is not used in the PLCAA, which does not distinguish the parts of a firearm as "component parts" or "accessories" and only considers some of them to be qualified products for purposes of the immunity it provides. Plaintiffs' use of the term "accessories" is a transparent attempt to evade the immunity the PLCAA provides to manufacturers and sellers of component parts for firearms.

Plaintiffs' argument that if a firearm is capable of "discharging a round," without a part, such part is not a "component part" for purposes of the PLCAA and, instead, is an "accessory," Opp'n at 18, defies logic. Just because a product is capable of operating without a certain part installed in or on it does not mean that such part is not a component part of the product.[3] The only reason Plaintiffs argue that the Sight is not a component part of the Subject Rifle is to attempt to

[2] Plaintiffs argue that even if EOTECH is a manufacturer of the Sight under the PLCAA, Project Echo is not because it does not have an FFL. Opp'n at 16. Plaintiffs' sole basis for seeking to hold Project Echo liable is based on its position as EOTECH's parent, and it is therefore entitled to the same immunity as EOTECH.

[3] While there are perhaps countless examples of this proposition, the following are just a few: A commercial passenger jet can operate without seats. A car can operate without a speedometer. A dryer can function without a lint trap. A freezer can operate without an ice maker. But absent a tactical reason to do so, no one would credibly consider arguing that these are not component parts of the products in which they are installed.

avoid the immunity provided by the PLCAA. Going outside of the pleadings, Plaintiffs claim that the Subject Rifle was sold to the Shooter without any sights. Opp'n at 18. The need for some type of sights to effectively aim the Subject Rifle, coupled with the importance that Plaintiffs place on the Sight, confirms that it is a component part of a firearm for purposes of the PLCAA.[4]

Plaintiffs attempt to distinguish the cases cited in the Motion for the proposition that the Sight is a component part for purposes of the PLCAA, but do not cite a single case holding to the contrary.[5] They claim that Defendants' straight-forward explanation of what is considered to be a component part of a firearm for purposes of the PLCAA would include a bottle-opener, camera, flashlight, or anything that could be "clipped, taped, glued, tied, or bolted onto a firearm," and that such could not be what Congress intended. Opp'n at 18. Plaintiffs are attempting to make an absurd argument. Nevertheless, if a plaintiff were to attempt to avoid the immunity provided to qualified manufacturers and sellers by the PLCAA by seeking to hold them liable on the basis that they made or sold such a part installed on a firearm that was criminally misused, it should be considered a component part for purposes of the PLCAA's immunity. That is exactly what

[4] Plaintiffs object to the dictionary definitions of "component" and "part" cited in the Motion, claiming that it is a "present-day definition" instead of one "from the time that PLCAA was passed," Opp'n at 18, but do not claim that the definition of those terms have changed since the enactment of the PLCAA. Plaintiffs similarly complain that the references to "sights" being component parts of firearms in the ATF's Guidebook - Importation & Verification of Firearms, Ammunition, and Implements of War and Firearm Component Identification Guide did not include page numbers. Both documents, which were attached as Exhibits 1 and 2 to the Motion are text searchable, but not consecutively page numbered. The references to sights are on Doc. Nos. 28-1 page 95 of 104 and 28-2 pages 4-7, 13-15, 21, 34, 37, 49, 60, and 64 of 79.

[5] Plaintiffs' reference to the discussion in *Prescott* of a different court's decision is irrelevant because the referenced case was decided before the enactment of the PLCAA, did not even concern the interpretation of the GCA, and rather addressed the narrow issue of whether the value of certain sights was subject to the federal excise tax imposed by 26 U.S.C. § 4181. *See* P*rescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1190 (D. Nev. 2018) (citing *Auto-Ordnance Corp. v. United States*, 822 F.2d 1566 (Fed. Cir. 1987)).

Plaintiffs are attempting to do here. Unlike a bottle opener or camera, sights are an essential part of a rifle needed for purposes of aiming, and the only reason why EOTECH is being sued is because the Sight was installed on, and part of, the Subject Rifle at the time it was criminally misused by the Shooter to cause the damages for which they seek relief. The Sight is therefore a qualified product for purposes of the PLCAA and because Plaintiffs do not argue that any exception to the PLCAA applies their claims against EOTECH, they must be dismissed.

## II. PLAINTIFFS CANNOT ESTABLISH BREACH OF DUTY.

Plaintiffs' claims should also be dismissed because they have failed to allege that EOTECH breached any duty to them. Plaintiffs argue that EOTECH purposely marketed the Sight for unlawful use in murder and other crimes. Opp'n at 5–6. There is no support for such claims based on the facts alleged in the Complaint. *See Bell Atlantic Corp v. Twombley*, 550 U.S. 544, 555 (2007) (complaint must contain "more than labels and conclusions"); *Savage v. Hill Cnty. Pawn*, No. 6:18-CV-00043-ADA, 2018 WL 7377622, at *2 (W.D. Tex. Oct. 10, 2018) ("averments . . . are either conclusory or unsupported speculation"). Although EOTECH sights are used by the military, including special operations units, Plaintiffs do not contest that EOTECH lawfully sold the Sight, which is a legal product, and can be used by civilian consumers for numerous legal purposes, including self-defense, hunting, and target shooting. Nothing in any advertisement by EOTECH referenced in the Complaint so much as hints that the Sight be used to commit murder or other crimes.

Other than Plaintiffs' patently false narrative of EOTECH's advertising, nothing in their Opposition establishes that EOTECH breached any duty owed to them. The cases on which Plaintiffs rely underscore why EOTECH did not breach any duty. In *Peek v. Oshman's Sporting Goods, Inc.*, the court explained that a firearm seller only has a duty not to complete a firearm sale

when "such a sale could for[e]seeably result in irresponsible use of the firearm by the purchaser with accompanying for[e]seeable injury to a third party" because the purchaser is "a *manifestly* irrational or mentally imbalanced person." 768 S.W.2d 841, 847 (Tex. App. 1989) (emphasis in original). Similarly, in *Love v. Zales Corp.*, 689 S.W.2d 282, 284 (Tex. App. 1985), the court observed in dicta that a "salesclerk was clearly negligent in selling the shotgun to a person who disclosed that he had previously *been committed to a mental institution*") (emphasis added). Based on the allegations in the Complaint, EOTECH sold the Sight, which is itself harmless, to the Shooter through the Internet and had no reason to believe that he was mentally defective or otherwise likely to criminally misuse it. Based on the cases upon which Plaintiffs rely, EOTECH owed no duty to them not to sell the Sight to the Shooter.

Two other cases on which Plaintiffs rely, though in the context of suicide, also undermine their argument that EOTECH should be liable for an intentional shooting committed using its product. *See Rodriguez v. Acad., Ltd.*, 694 S.W.3d 780, 786–87 (Tex. App. 2024) ("suicide was the sole cause of the damages sustained"), *review denied* (Sept. 27, 2024); *Diggles v. Horwitz*, 765 S.W.2d 839, 842–43 (Tex. App. 1989) ("It is glaringly clear that [manufacturer], did not cause a mental illness nor did it cause a rage nor did it cause a frenzy nor did it bring about an uncontrollable impulse"; "[h]ence, [manufacturer] is simply not liable for . . . tragic suicide"). The fact that Plaintiffs have resorted to wholly inapplicable cases, including out-of-state cases concerning a radio station and children cooking, demonstrates the extent to which they are attempting to stretch the law to impose liability on EOTECH. *See Weirum v. RKO Gen., Inc.*, 539 P.2d 36, 39 (Cal. 1975); *In the Matter of Uncle Ben's, Inc.*, 89 F.T.C. 131 (1977).[6]

[6] Plaintiffs' reliance on a Connecticut state court case is also misplaced because they have not alleged that EOTECH engaged in any marketing that was not "lawful." *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 309 (Conn. 2019).

Texas law is clear that "there is no duty to protect others from the criminal acts of third parties," *Park v. Exxon Mobil Corp.*, 429 S.W.3d 142, 145 (Tex. App. 2014), including in the context of seller of a firearms product that is later used in a criminal act, where the seller did not know, and should not have known, that the sale was likely to result in the criminal act, *Wal-Mart Stores, Inc. v. Tamez*, 960 S.W.2d 125, 131 (Tex. App. 1997). Plaintiffs have no law to support their argument that EOTECH's legal sale of a lawful product to someone who did not give it any reason to believe he might criminally misuse it could possibly constitute a breach of any duty owed to them. Thus, this Court should dismiss Plaintiffs' claims for failure to allege breach of duty.

## III. PLAINTIFFS CANNOT ESTABLISH CAUSATION.

Plaintiffs concede that when lack of causation is clear, it can be resolved as a matter of law. Opp'n at 11. This Court should dismiss Plaintiffs' claims against EOTECH based on lack of causation because they have failed to allege facts to support foreseeability or causation in fact, and because the criminal shooting was an intervening, superseding cause that broke any causal link possibility attributable to EOTECH. As explained in the Motion, EOTECH's lawful sale of the Sight is not—and cannot—be sufficient to find that EOTECH knew, or should have known, that the Shooter would commit the criminal shooting. Plaintiffs' arguments would allow automobile manufacturers to be held liable for someone intentionally crashing into pedestrians because they are shown being used for criminal purposes in videogames, such as Grand Theft Auto.

Plaintiffs attempt to sidestep the case law discussed in the Motion that makes clear that the Sight was not a substantial factor in causing their harm. Plaintiffs summarily—and incorrectly—claim that the cases do not apply here because in those cases "courts found that events in a complex chain of events were too remote from the ultimate event to constitute a legal cause." Opp'n at 12. But that is precisely why the Sight was not the cause of the shooting. Plaintiffs' attempt to distance

their claims from the *Lowy* decision highlights its significance. As explained in the Motion, in addition to finding the plaintiffs' claims barred by the PLCAA, the court rejected the notion that firearm-related business activities (such as marketing) caused a criminal shooting. *See Lowy v. Daniel Def., LLC*, No. 1:23-CV-1338, 2024 WL 3521508, at *5 (E.D. Va. July 24, 2024). As in *Lowy*, here, the Sight was merely tangential to the Shooter's criminal actions in committing the shooting and EOTECH's actions come nowhere close to being a substantial factor in causing the shooting. Plaintiffs cannot rely on their misrepresentations regarding EOTECH's marketing, which merely shows the beneficial features of a lawful product, to claim that EOTECH was promoting its use in the commission of a crime.

Plaintiffs' claims also fail for lack of causation because the Shooter's actions in committing the shooting constitute "a new and independent, or superseding, cause." *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016). Plaintiffs' sole counter to this is that the shooting is not a superseding cause because EOTECH should have foreseen it. Opp'n at 14. But as discussed in the Motion, under Texas law, "[u]sually, the criminal conduct of a third party is a superseding cause relieving the negligent actor from liability." *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 714 (5th Cir. 2002). Texas courts have specifically addressed this issue and made clear that a criminal shooting breaks the causal chain unless the supplier of the firearm or firearm product knew, or had reason to believe, that the recipient would commit a criminal shooting. Plaintiffs fail to distinguish this critical proposition,[7] because they have alleged no facts, only mere conclusory

[7] *Johnson v. Walker*, No. 09-22-00255-CV, 2023 WL 2182299, at *5 (Tex. App. Feb. 23, 2023) (collecting cases); *Cowart v. Kmart Corp.*, 20 S.W.3d 779, 782 (Tex. App. 2000); *Chapman v. Oshman's Sporting Goods, Inc.*, 792 S.W.2d 785, 787 (Tex. App. 1990); *Holder v. Bowman*, No. 07-00-0126-CV, 2001 WL 62596, at *4 (Tex. App. Jan. 25, 2001). Plaintiffs' attempt to distinguish these cases in fact highlights their applicability. Opp'n at 14 n.6. Plaintiffs' claim that the cases cited in the Motion do not apply because in those cases the sale of the product "merely created a condition, rather than an active and efficient cause," or that "the criminal conduct was not

assertions, to establish that EOTECH knew, or even had any reason to believe, when selling the Sight to the shooter, that he would engage in a criminal shooting using the Subject Rifle on which it was installed. The Shooter's criminal shooting is the textbook definition of a superseding, intervening cause. This Court should therefore dismiss Plaintiffs' claims against EOTECH for lack of causation.

## IV. PLAINTIFFS HAVE CONCEDED DISMISSAL OF THEIR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.

Plaintiffs did not respond to EOTECH and Project Echo's argument that they failed to state a claim for intentional infliction of emotion distress and have thus conceded that this Court should dismiss that claim. *See* Rule CV-7(D) (opposition "must contain a concise statement of the reasons for opposition"); *see also Kellam v. Servs.*, No. 3:12-CV-352-P, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) ("failure to respond to arguments constitutes abandonment or waiver"), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014); *Green v. McDonough*, No. SA-22-CV-00423-JKP, 2022 WL 17330852, at *2 (W.D. Tex. Nov. 28, 2022) ("failure to address . . . argument . . . concedes this point"; "allegations/cause of action dismissed").

## V. PLAINTIFFS HAVE NO BASIS FOR SEEKING PUNITIVE DAMAGES.

Plaintiffs' argument that this Court should not dismiss their request for punitive damages rests on their factually unsupported argument that EOTECH "promot[ed] . . . its sights to commit assaults and murder." Opp'n at 14. But Plaintiffs have not pointed to a single advertisement by EOTECH encouraging anyone to commit a crime using its products. Despite Plaintiffs' attempt to characterize the Sight as a product that has no purpose except for criminal use, the Sight is a lawful product, legally sold to the Shooter, which can be used for numerous legal purposes by civilians.

---

foreseeable under the circumstances," but those are the very reasons why their claims against EOTECH fail.

The Shooter's unilateral decision to criminally misuse the Sight does not make its sale by EOTECH conduct "involv[ing] an extreme degree of risk," as required to support a claim for punitive damages.[8]

## VI. PLAINTIFFS HAVE NO BASIS FOR CLAIMS AGAINST PROJECT ECHO.

In response to the argument that their claims against Project Echo should be dismissed for lack of a basis to pierce the corporate veil, Plaintiffs argue that their claims against Project Echo are not as EOTECH's parent company but, instead, because Project Echo "w[as] collectively negligent in marketing and selling the [S]ight to the Shooter." Opp'n at 20. But that argument does not comport with the allegations in the Complaint, which seeks to hold Project Echo liable solely because it is EOTECH's parent. Pet. ⁋⁋ 14, 15. Plaintiffs raise no independent allegations against Project Echo relative to the sale of the Sight. As Plaintiffs have now disclaimed asserting a claim against Project Echo based on piercing the corporate veil, no basis whatsoever in fact or law exists in the Complaint for Plaintiffs' claims against Project Echo. Thus, this Court should dismiss Plaintiffs' claims against Project Echo.

## CONCLUSION

For the above reasons, EOTECH and Project Echo respectfully request that this Court grant the Motion, dismiss all claims against them with prejudice,[9] and grant such other relief as it deems just and proper.

---

[8] *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 16–17 (Tex. 1994), *superseded by statute on other grounds as stated in U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 140 (Tex. 2012).

[9] Plaintiffs ask that if any portion of the Complaint is to be dismissed, the Court grant them leave to amend. Opp'n at 20. Plaintiffs chose to oppose the Motion on the merits instead of seeking leave to file an amended complaint. "It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000). There are no amendments that could avoid the required dismissal of their claims against EOTECH and Project Echo, and Plaintiffs do not even attempt to identify how they would attempt to do so. Accordingly, this Court should deny leave to amend.

Dated: November 29, 2024

Respectfully submitted,

By: */s/ Daniel Buechler*
Daniel Buechler (State Bar No. 24047756)
**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
Plaza of the Americas
700 North Pearl Street, Twenty-Fifth Floor
Dallas, TX 75201-2832
Telephone: (214) 871-8262
Facsimile: (214) 871-8209
E-Mail: dbuechler@thompsoncoe.com

-and-

Zandra Foley (State Bar No. 24032085)
**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
4400 Post Oak Parkway, Suite 1000
Houston, TX 77027
Telephone: (713) 403-8200
Facsimile: (713) 403-8299
E-Mail: zfoley@thompsoncoe.com

-and-

Christopher Renzulli (admission pending)
Scott C. Allan (admission pending)
**RENZULLI LAW FIRM, LLP**
One North Broadway, Suite 1005
White Plains, NY 10601
Telephone: (914) 285-0700
Facsimile: (914) 285-1213
Email: crenzulli@renzullilaw.com
sallan@renzullilaw.com
**ATTORNEYS FOR DEFENDANTS EOTECH, LLC AND PROJECT ECHO HOLDINGS LLC D/B/A AMERICAN HOLOPTICS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically served upon all counsel of record through the CM/ECF system on this 29th day of November 2024.

*/s/ Daniel P. Buechler*
Daniel P. Buechler